**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUIS CHINO, *on behalf of himself,*
*FLSA Collective Plaintffs ,and the Class,*

       Plaintiff,

       v.

BUCATINI LLC d/b/a Bucatini,
BARNEA BISTRO, LLC d/b/a Barnea Bistro,
BONITO RESTAURANT, LLC d/b/a The Lotus
Room, f/d/b/a Bonito 47, and
JOSHUA KESSLER,

       Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff LUIS CHINO ("Plaintiff CHINO" or "Plaintiff") on behalf of himself, FLSA

Collective Plaintiffs, and the Class, by and through his undersigned attorneys, hereby files this

Class and Collective Action Complaint against Defendants BUCATINI LLC d/b/a Bucatini,

BARNEA BISTRO, LLC d/b/a Barnea Bistro, BONITO RESTAURANT, LLC d/b/a The Lotus

Room, f/d/b/a Bonito 47 ("Corporate Defendants"), and JOSHUA KESSLER ("Individual

Defendant," and collectively with the Corporate Defendants, the "Defendants") and states as

follows:

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages, including overtime wages, due to time shaving, (3) illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages, including overtime wages, due to time shaving, (3) illegally retained gratuities, (4) unpaid wages due to illegal uniform cost deductions, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

5.      Plaintiff, LUIS CHINO, is a resident of Queens County, New York.

6.      At all times relevant to this action, Corporate Defendants have owned and operated a group of restaurants as a single integrated enterprise. Defendants' restaurants are located at the following addresses:

      a.   Bucatini – 2 East 45th Street, New York, NY 10017;

      b.   Barnea Bistro – 211 E 46th Street, New York, NY 10017;

      c.   The Lotus Room – 114 W 47th Street, New York, NY 10036; and

      d.   Bonito 47 – 114 W 47th Street, New York, NY 10036 (now closed).

(collectively, the "Restaurants").

7.　　Corporate Defendant BUCATINI LLC is a domestic limited liability company operating under the laws of the State of New York, with a principal place of business located at 2 East 45th Street, New York, NY 10017 and an address for service of process located at 59 Kewanee Road, New Rochelle, New York, NY 10804.

8.　　Corporate Defendant BARNEA BISTRO is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at 211 E 46th Street, New York, NY 10017.

9.　　Corporate Defendant BONITO RESTAURANT, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 114 W 47th Street, New York, NY 10036 and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

10.　　Individual Defendant JOSHUA KESSLER is the owner and principal of the Corporate Defendants. JOSHUA KESSLER exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. JOSHUA KESSLER exercises—and delegates to managers and supervisors—the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to JOSHUA KESSLER directly regarding any of the terms of their employment, and JOSHUA KESSLER would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, and terminating or hiring such employees. JOSHUA KESSLER exercised functional control over the business and financial operations of the Corporate Defendants. JOSHUA KESSLER had the power and authority to supervise and control

supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees. Defendant JOSHUA KESSLER personally trains his employees across all of his Restaurants, replicating the same dining experience enterprise wide. *See* **Exhibit A.**

11.     While the above-listed Restaurants are nominally separate entities, they are operated by Defendants as a single integrated enterprise, for the purposes of the FLSA and the NYLL. Specifically, Corporate Defendants are engaged in related activities, share common ownership, and have a common business purpose:

a.  Employees and supplies are regularly interchanged and transferred among Defendants' Restaurants on an as-needed basis. For example, during Plaintiff's employment, Plaintiff observed that his coworkers were routinely sent to other locations to fill in whenever a location was understaffed. Plaintiff likewise observed that a busser who typically worked at Barnea regularly covered shifts at Bucatini as needed.

b.  All restaurants are owned and operated by Individual Defendant JOSHUA KESSLER.

i.  "Following the success of his Barnea Bistro, Chef Josh Kessler opens Bonito 47." *See* **Exhibit B** at 1;
ii.  "Hospitality vet Josh Kessler (Barnea, Bonito, Lotus Room) […]" *Id.* at 2;
iii.  "The Lotus Room and Confessional opened this week at 114 West 47th Street in Midtown. The new concept is spearheaded by Josh Kessler and chef John Creger" *Id.* at 3;
iv.  "'With Bucatini, we set out to create something timeless […],' said founder Josh Kessler." *Id.* at 4;
v.  "Although the menus are different, both restaurants [] share Kessler's same philosophy: listen to the guests, curate the best possible meals for them and cosset them in a beautiful, luxe space." *Id.* at 5.

c.  Individual Defendant JOSHUA KESSLER is the principal listed on the liquor licenses of each of the Corporate Defendants and is accordingly required to visit the Restaurants frequently to ensure employees comply with local liquor laws. *See* **Exhibit C**.

d.  Bucatini and Barnea Bistro share a common interior designer, Roy Nachum.
i.  "[Bucatini –] An immersive dining room, designed by Roy Nachum— founder of Mercer Project—merging art, texture, and light." **Exhibit D** at 1;

  ii. "The expanded Barnea Bistro opens this month and is designed, like the original restaurant, by New York-based Israeli artist Roy Nachum." *Id.* at 2.

 e. All of the Restaurants share a common look and feel, featuring raw natural materials and dim lighting. *See* **Exhibit E.**

 f. Barnea Bistro and Bonito 47 share common ingredients, including USDA prime beef; and suppliers, including Yama Seafood. ("[Kessler] and his staff source the best USDA prime beef, fish (at Barnea Bistro, he buys from the fish purveyor used by Le Bernardin, what may consider to be one of New York's great fish restaurants) and vegetables.") *See* **Exhibit F, Article about Bonito 47**;

 g. The Lotus Room and Bonito 47 both located at 114 W 47th Street, New York, NY 10036;

 h. Barnea Bistro, Bucatini, and Bonito 47 are often advertised collectively on social media, in connection with Individual Defendant JOSHUA KESSLER. The Restaurants have promotions applicable at both Barnea Bistro and Bonito 47 *See* **Exhibit G.**

 i. The Restaurants have a centralized Human Resources and Administration Department that deals with hiring, firing, and administering all the Restaurants' workforce.

12. At all relevant times, Corporate Defendants met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

13. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

14. At all relevant times, Defendants were Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

15. At all relevant times, Plaintiff was Defendants' employee within the meaning of the NYLL §§ 2 and 651.

16.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and Regulations thereunder.

17.     At all relevant times, Defendants had a gross annual revenue in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees, including but not limited to servers, bussers, runners, barbacks, bartenders, porters, kitchen staffs, cooks, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime wages, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. Plaintiff and tipped FLSA Collective Plaintiffs are further subject to Defendants' practice of (i) invalid tip credit deductions, and (ii) illegal tip retention.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all current and former non-exempt front-of-house and back-of-house employees, including but not limited to servers, bussers, runners, barbacks, bartenders, porters, kitchen staffs, cooks, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

22.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

23.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, upon information and belief, there is no doubt that there are more than forty (40) members of the Class.

24.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices

by Defendants, as alleged herein: (1) unpaid wages due to time shaving, (2) illegal uniform cost deductions, (3) failure to provide Class Members with proper wages statements with every payment of wages, and (4) failure to properly provide wage notices to Class Members, at date of hiring and annually, per requirements of the NYLL.

25.     With regard to Plaintiff and the Tipped Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of (1) improper tip credit deductions, and (2) improper tip retention. Defendants failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) caused tipped employees to in non-tipped duties for more than 30 consecutive minutes; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

26.     Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

29. Defendants and other employers throughout the state violate the NYLL. Currently working employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiff and Class Members the proper wages for all hours worked;

f.  Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were deducting tip credits from their wages;

g.  Whether Defendants illegally retained portions of tips earned by Plaintiff and Class Members;

h.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

i.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for over 20% of their total hours worked each workweek;

j.  Whether Defendants accurately tracked the number of tips earned each day and maintained records thereof;

k.  Whether Defendants established an invalid tip pooling arrangement by illegally including non-tipped employees, including managers, in the tip pool;

l.  Whether Defendants retained any portion of the gratuities for events intended for their tipped employees;

m.  Whether Defendants unlawfully required Plaintiff and Class Members to purchase and maintain uniforms at their own expense;

n.  Whether Defendants deducted the proper amount of tip credits from Plaintiff and Class Members for each payment period under the NYLL; and

o.  Whether Defendants provided proper tip credit notices at dates of hiring and annually thereafter to Plaintiff and Class Members.

## STATEMENT OF FACTS

### History of Plaintiff's Employment

31.  In or around July 2025, Plaintiff CHINO was hired by Defendants to work as a Busser at Defendants' Bucatini restaurant located at 2 East 45th Street, New York, NY 10017. Plaintiff CHINO worked for Defendants until on or about January 7, 2026, when he was terminated.

32.  Throughout his employment, Plaintiff CHINO was paid weekly, by check, at a rate of eleven dollars ($11.00) per hour, plus tips. FLSA Collective Plaintiffs and Class Members were similarly paid by Defendants at tipped credit wage rates below the prevailing minimum wage rates.

33.  At all relevant times, Plaintiff CHINO was scheduled by Defendants to work approximately five (5) days per week, typically from 3:30 p.m. to closing time. Plaintiff CHINO also worked double shifts (approximately 10:30 a.m. to 10:30 p.m.) one to two times per week at the beginning of his employment, and one to three times per month thereafter.

**Plaintiff's Time Shaving Claims**

34.    At all relevant times, Defendants failed to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members wages for all hours they were required by Defendants to work, in violation of the FLSA and the NYLL.

*Meal Break Time Shaving*

35.    At all relevant times, Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock out for a thirty-minute meal break every day.

36.    Although the meal breaks were supposed to be free and clear and without interruption, Defendants' managers interrupted employees' meal breaks daily, approximately ten (10) to fifteen (15) minutes into the break by requiring them to attend mandatory staff meetings to discuss plans for the evening service. These mandatory meetings lasted approximately twenty (20) to twenty-five (25) minutes, during which time Plaintiff was off the clock but was still required to attend and participate. Because the timing of the staff meetings usually corresponded with employees' meal breaks, many employees, including Plaintiff, were often forced to take their meals while standing in the meeting.

37.    Because these mandatory meetings occurred during Plaintiff's unpaid meal breaks, Plaintiff was not fully relieved of his duties and was effectively performing off-the-clock work. Defendants failed to compensate Plaintiff for this time.

38.    Defendants similarly required FLSA Collective Plaintiffs and Class Members to attend these mandatory meetings during their unpaid meal breaks without compensation.

*Pre- and Post-Shift Off-the-Clock Work*

39.    Plaintiff and other employees were required by Defendants to arrive at the restaurant thirty (30) minutes before their scheduled shift to begin working in order to ease shift transitions. Plaintiff was not compensated for this pre-shift off-the-clock work. FLSA Collective

Plaintiffs and Class Members were similarly required to come in early without additional compensation.

40.    Plaintiff, FLSA Collective Plaintiffs, and Class Members were regularly asked to stay beyond their shift, or even called after they left and asked to return to work, in order to accommodate exceptional business. When this happened, employees were still required to clock out at their designated shift end and were not compensated for the additional time that they worked after their scheduled shift. Plaintiff CHINO estimates that this happened weekly.

41.    On an as-needed basis, Plaintiff CHINO was sent to a supermarket to purchase groceries for the restaurant immediately upon his arrival, before he had clocked in. This trip happened weekly and took approximately two (2) hours, during which time Plaintiff CHINO was off the clock and not compensated. Defendants regularly required other employees to perform similar off-the-clock errands.

42.    Defendants knowingly and willfully operated their business with a policy of failing to pay wages for all required hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

**Plaintiff's Unpaid Wages Claims**

43.    Plaintiff was not compensated for the last two (2) days of his employment.

44.    Defendants knowingly and willfully failed to pay Plaintiff wages for all hours worked.

**Plaintiff's Invalid Tip Credit Claims**

45.    At all relevant times, Defendants deducted tip credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members as permitted by the FLSA and the NYLL.

46.    However, Defendants were not entitled to claim any tip credit allowances from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members under the FLSA and the NYLL

because Defendants: (i) impermissibly required them to perform non-tip producing side work for continuous periods of time exceeding 30 minutes; (ii) impermissibly required them to perform non-tip producing side work for more than 20 percent of their worked time each week; (iii) maintained an unlawful tip pool; and (iv) unlawfully retained and misappropriated Plaintiff's, FLSA Collective Plaintiffs', and Class Members' tips and gratuities.

47. Throughout his employment, Plaintiff CHINO was required by Defendants to perform substantial non-tipped side work totaling approximately two and one-half (2.5) or more hours per shift. Plaintiff CHINO's non-tipped work consisted of: (i) arranging the outside patio with tables, chairs, and plants; (ii) moving furniture from upstairs to downstairs and vice-versa; (iii) polishing glassware and silverware; (iv) cutting bread; (v) performing barista duties; (vi) cleaning the restaurant; (vii) sweeping; (viii) cleaning windows; (ix) taking out garbage; (x) cleaning all bathrooms; and (xi) going to the supermarket to purchase vegetables and ingredients as needed.

48. Throughout Plaintiff CHINO's employment, although he was paid at hourly tip credit rates for all hours worked, he was required by Defendants to engage in the above non-tipped work for (i) over 20% of his total hours worked and (ii) continuous periods of time exceeding thirty (30) minutes. Such excessive non-tipped side work invalidates Defendants' tip credit deductions.

49. At all relevant times, Defendants required FLSA Collective Plaintiffs and Class Members to perform similar non-tipped work for similar amounts of time while subjecting them to tip credit deductions.

**Plaintiff's Invalid Tip Pool Claims**

50. At all relevant times, Defendants subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to an invalid tip pool whereby managers, supervisors, and non-tipped

employees were included and wrongfully received portions of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' tips.

51.    Specifically, Defendants' tip pool included the following individuals who are not eligible to participate in a valid tip pool:

a.  Diego Maniero – A manager with the power to hire and fire and set employees' schedules. Manager Diego was in charge of the floor and would only serve a single table, instead of a regular section, because he spent 95% of his work time on managerial duties. Despite his position as a salaried supervisor and exempt duties, Manager Diego was still included in the tip pool and even received the largest number of points.

b.  Hostesses – All hostesses were included in the tip pool despite the fact that they did not serve any customers.

c.  Arelis Centeno – A payroll processor and general administrator. Ms. Centeno was included in the tip pool under the fake name "Nelly Caiura." The only reason that Plaintiff was even aware of her presence in the tip pool is because Plaintiff CHINO asked management who Nelly Caiura was because there was never a person working with that name and he was told it was actually Ms. Centeno.

52.    The inclusion of managers, office workers, and non-service employees in Defendants' tip pool renders the entire tip pool invalid and invalidates any tip credit claimed by Defendants against the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

53.    Plaintiff complained about the improper tip pool and was brushed off. Multiple employees complained, and a company-wide meeting was held during which JOSHUA KESSLER stated: "Every place I own we do this tip structure."

**Plaintiff's Tip Retention Claims**

54.    At all relevant times, Defendants unlawfully retained and misappropriated tips and gratuities from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

55.    Throughout his employment, Plaintiff was routinely required to work at private events. In return for Plaintiff's, FLSA Collective Plaintiffs', and Class Members' services at these private events, Defendants' clients left cash tips and were charged a gratuity fee in the event contracts. However, Defendants always failed to distribute the full amount, and sometimes any amount, of these service charges and gratuities to Plaintiff, FLSA Collective Plaintiffs, and Class Members.

56.    The cost for private events was high, running into the tens of thousands of dollars, of which the gratuity charge represented a significant percentage (around 20% depending on the event). However, Plaintiff noticed that his weekly tip outs remained flat across the many weeks that he worked, and did not change for the weeks when he worked events, despite the large gratuity fees that customers were charged. When he spoke with his coworkers, Plaintiff discovered that this was true for all tipped employees.

57.    Following those conversations, Plaintiff and other employees asked to see tip sheets and event costs. Defendants refused those requests and failed to produce any tip sheets or other records of tips and gratuities left by customers for private events.

58.    Additionally, Plaintiff was missing tips for certain shifts worked. Upon information and belief, Defendants failed to accurately track and distribute all tips owed to Plaintiff, FLSA Collective Plaintiffs, and Class Members.

59.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining and misappropriating tips and gratuities from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

**Plaintiff's Uniform Cost Claims**

60.    At all relevant times, Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to purchase and maintain their own work uniforms. Specifically, Plaintiff was required to purchase his own white shirt, tie, black slacks, and black shoes at his own expense.

61.    Although Defendants provided Plaintiff CHINO with an apron, he was still required to purchase the rest of his uniform. Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to show up to work in their clean uniform each day. Because of this, Plaintiff was forced to clean and iron his uniform on a near-daily basis. Defendants never reimbursed Plaintiff, FLSA Collective Plaintiffs, and Class Members for any of the costs incurred by purchasing and cleaning their uniforms.

62.    These uniform purchase and maintenance costs, when combined with Defendants' payment of tip credit wages, reduced Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages below the statutory minimum wage, in violation of the NYLL.

**Plaintiff's WTPA Violation Claims**

63.    At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA")—incorporated into the NYLL.

64.     At all relevant times, Defendants failed to provide Plaintiff with proper wage notices at the time of hiring as required by NYLL § 195(1).

65.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

66.     New York Courts continue to find sufficient standing to support these claims. One such Court stated the following at summary judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

67.     Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as

required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked.

68.    By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

69.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employment with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

70.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

71.     Defendant knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

72.     Plaintiff retained Lee Litigation Group, PLLC to represent him in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

73.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

74.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA.

75.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

76.     At all relevant times, the Corporate Defendants had gross annual revenues in excess of $500,000.00.

77.     At all relevant times, Defendants failed to pay compensation, including overtime, at the statutory rate of time-and-one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to Defendants' time shaving policy.

78.     Defendants willfully violated Plaintiff's, FLSA Collective Plaintiffs', and Class Members' rights by failing to pay them wages in the lawful amount for hours worked. Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to Plaintiff and other tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees.

79.     At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting a tip pooling scheme where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, and which illegally included managers. Defendants failed to maintain tip sheets and failed to inform Plaintiff of his respective tip pool contribution. As a result, Defendants illegally retained tips through the tip pooling arrangement. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

80.     Defendants further illegally retained tips and gratuities intended for Plaintiff and FLSA Collective Plaintiffs.

81.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

82.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their intentional failure to compensate Plaintiff and FLSA Collective Plaintiffs for every hour they worked, including regular hours and overtime hours.

83. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, for off-the-clock work caused by time shaving, unpaid wages due to invalid tip credit, damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

86. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

87. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

88. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and Class Members for all hours worked, including overtime, due to a policy of time shaving.

89. As a result of Defendants' off-the-clock work requirements, Plaintiff, FLSA Collective Plaintiffs, and Class Members were not compensated for all hours actually worked, in violation of the NYLL.

90. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

91. Defendants willfully violated Plaintiff's and the Class Members' rights by instituting an illegal tip pooling scheme in which Class Members were required to share tips with non-tipped employees, including management. In doing so, Defendants willfully deprived Plaintiff and Class Members of their lawfully earned wages.

92. Defendants willfully violated Plaintiff's and Class Members' rights by requiring them to purchase and maintain a uniform without reimbursement which brought their wages below the statutory minimum wage.

93. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants were not entitled to deduct a tip credit from the wages of Plaintiff and Class Members because Defendants failed to satisfy the requirements under the NYLL. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including off-the-clock work caused by time shaving and tips illegally withheld from Plaintiff and Class Members.

94. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

95. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving, unpaid wages due to invalid tip credit, unreimbursed uniform costs, damages representing disgorgement of illegally retained tips, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to Defendants' policy of time shaving, due under the FLSA and the NYLL;

d.  An award of unpaid wages due under the FLSA and the NYLL, due to an invalid tip credit;

e.  An award equal to the amount of the improperly retained tips and event gratuities withheld by Defendants;

f.  An award of unpaid wages due to unreimbursed uniform purchase costs, and unpaid uniform maintenance pay under the NYLL;

g.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay all wages pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work pursuant to the NYLL;

j.  An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and cost;

k.  Designation of Plaintiff CHINO as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to FRCP 23;

m. Designation of Plaintiff CHINO as Representative of the Class; and

n.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 7, 2026           Respectfully submitted,
       New York, New York


By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*